**PULLMAN TRUST & SAVINGS BANK,**
an Illinois banking corporation,
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 63 C 344.

United States District Court
N. D. Illinois, E. D.

Jan. 6, 1964.

Marshall Patner, Chicago, Ill., for plaintiff.

Frank E. McDonald, U. S. Atty., Northern District of Illinois, E. I. Katz, Asst. U. S. Atty., Chicago, Ill., for defendant.

CAMPBELL, Chief Judge.

This cause is presently before me on the motion of the defendant, the United States of America, to dismiss the complaint for failure to state a claim upon which relief could be granted, or in lieu thereof for summary judgment. Title 49 §§ 781–788 deal with "Seizure and Forfeiture of Carriers Transporting, etc., Contraband Articles". The automobile was forfeited to the United States pursuant to the authority of these sections.

Both parties agree as to the facts, which the government's memorandum in support of its motion sets out as follows, and which I adopt as my findings of fact.

1. On December 6, 1961, and April 12, 1962, a 1960 Ford Thunderbird Coupe, Motor and Serial Number OY71Y171111, was used by Johnnie L. Carter to facilitate the sale of narcotic drugs in Chicago, Illinois. During the sale which took place on December 6, 1961, all negotiations, the sale, and the delivery of drugs took place in this 1960 Ford Thunderbird. All of the narcotic drugs were contraband as defined by 49 U.S.C. § 781, as shown in Exhibit A(1).

2. On July 26, 1962, the Narcotic District Supervisor caused the automobile to be seized by federal narcotic agents pursuant to 49 U.S.C. § 782. The Narcotic District Supervisor determined the domestic value of the automobile at the time and place of seizure to be $2,430.00 pursuant to 19 U.S.C. § 1606, 49 U.S.C. § 784, and 26 CFR 153.3.

3. The Narcotic District Supervisor caused notice of seizure and of the intention to forfeit and sell or otherwise dispose of the automobile to be published in the Chicago American, a newspaper of general circulation, on August 9, Au-

gust 16, and August 23, 1962, all as prescribed by 19 U.S.C. § 1607 as amended, 49 U.S.C. § 784 and 26 CFR 153.4, as shown in Exhibit A(2).

4. On August 7, 1962, the Narcotic District Supervisor mailed to the Pullman Savings and Trust Bank, 400 E. 111th Street, Chicago, Illinois, a notice that the automobile had been seized by the Bureau of Narcotics on July 26, 1962, at Chicago, Illinois, for violation of 49 U.S.C. §§ 781–788 and that steps were being taken to forfeit the vehicle to the United States Government, as shown in Exhibit A(3).

5. No one filed with the Narcotic District Supervisor a claim to the automobile and gave bond within 20 days from the date of first publication of the notice of seizure as contemplated by 19 U.S.C. § 1608, 49 U.S.C. § 784 and 26 CFR 153.4. On September 12, 1962, the Narcotic District Supervisor declared the automobile forfeited to the United States pursuant to 19 U.S.C. § 1609, 49 U.S.C. § 784, and 26 CFR 153.6, as shown in Exhibit A(4).

6. On August 17, 1962, a petition for remission or mitigation of forfeiture of the automobile was received by the Narcotic District Supervisor from the registered owner of the automobile, Johnnie L. Carter, and Barbara Carter. On September 21, 1962, after due investigation, the petition of Johnnie L. Carter and Barbara Carter was denied by the Commissioner of Narcotics for the reason that Johnnie L. Carter used the automobile in violation of the law, and further for the reason that Barbara Carter lacked a sufficient interest in the automobile to support a petition as shown in Exhibit A(5). By Treasury Department Order No. 180–1 of December 9, 1953 (18 F.R. 8208), the Secretary of the Treasury delegated to the Commissioner of Narcotics the authority to exercise administrative discretion on petitions of the kind presented, the delegation having been made pursuant to Reorganization Plan No. 26 of 1950, note following 5 USC § 133Z–15.

7. On October 1, 1962, the Commissioner of Narcotics advised the Narcotic District Supervisor in Chicago that since the petition regarding the automobile had been denied, the automobile could be put into official use, as shown in Exhibit A(6). By a letter received on October 4, 1962, the Commissioner of Narcotics was advised by the Narcotic District Supervisor that the automobile would be put into official use on October 3, 1962, as shown in Exhibit A(7).

8. On December 12, 1962, the Commissioner of Narcotics received from the Pullman Trust and Savings Bank, by Marshall Patner its attorney, a "Supplemental Petition" in regard to the automobile. This petition stated that the petitioner had an interest in the automobile by virtue of a retail installment contract. The petition further alleged that under the terms of the contract the purchasers were not in default until October 6, 1962, and therefore until this date, the petitioner " * * * had no standing to petition as a lienholder for the said automobile", as shown in Exhibit A(8).

9. On December 13, 1962, the Commissioner of Narcotics denied the petition submitted by the Pullman Trust and Savings Bank. The Commissioner ruled, and the petitioner was advised by letter dated December 17, 1962, that the petitioner was in error in alleging that it had no standing to petition. The petitioner could have submitted a petition as lienholder immediately upon receiving notice of the seizure on August 7, 1962, pursuant to 26 CFR 153.8. Accordingly, in conformance with the regulations contained in 26 CFR 153.8(c) and 26 CFR 153.9, the petitioner was notified that since the automobile had been authorized for official use on October 1, 1962, the petition submitted could only receive consideration by being treated as a petition for restoration of proceeds of sale or value of the property. The petitioner was further advised that a petition for restoration must be supported by satisfactory proof that the petitioner did not know of the seizure prior to the

declaration or condemnation of forfeiture (26 CFR 153.9). Since notice of forfeiture was mailed to the petitioner on August 7, 1962, and the automobile was not declared forfeited until September 12, 1962, the petitioner was not in a position to support a petition for restoration of proceeds of sale or value of the property, as shown in Exhibit A(9–11).

10. On December 26, 1962, another petition was received in the Bureau of Narcotics Chicago office from the Pullman Trust and Savings Bank. On January 3, 1963, the Commissioner of Narcotics notified the petitioner through its attorney Mr. Patner, that since the petitioner had not submitted additional support for administrative relief the Commissioner was compelled to abide by his decision of December 17, 1962, and the amended petition was denied, as shown in Exhibit A(12, 13).

11. On January 17, 1963, the Commissioner of Narcotics received a letter from Mr. Patner which requested reconsideration of the Commissioner's decisions denying the petitions submitted. Mr. Patner's letter also raised a question as to what he had been advised by Mr. Wanzeck of the Bureau of Narcotics Chicago office regarding the period within which the filing of a petition would be considered as being "timely", as shown in Exhibit A(14).

12. On January 25, 1963, Narcotic Agent William T. Wanzeck submitted his comments to the Narcotic District Supervisor regarding the conversation with Mr. Patner in early December of 1962. Agent Wanzeck's letter reveals that he properly advised Mr. Patner regarding the caption of the petition and in advising him that the only recourse available to Mr. Patner was a petition for restoration of proceeds or value of property. Mr. Patner then acknowledged to Agent Wanzeck that the petitioner had been notified of the seizure by letter dated August 7, 1962, but that he felt that he had no standing to petition until the contract was in default, as shown in Exhibit A(15–16).

13. On January 29, 1963, Mr. Patner was notified by the Commissioner of Narcotics that upon reconsideration of the petitions submitted he was compelled to adhere to his previous denials of these petitions. The Commissioner advised Mr. Patner that the denial was predicated on the fact that the delay in filing a timely petition was entirely due to an error by the petitioner, and was not the result of any act or omission by an employee of the Bureau of Narcotics, as shown in Exhibit A(17).

14. On March 1, 1963, the plaintiff filed a Complaint in this Court seeking review of the actions of the Commissioner of Narcotics.

15. On May 14, 1963, the defendant, United States of America filed its Motion to Dismiss and Motion for Summary Judgment.

Plaintiff's complaint specifically sets out its reliance upon the review provision of the Administrative Procedure Act, namely § 10 thereof. (Title 5 U.S.C.A. § 1009). It alleges an abuse of discretion under Title 49 U.S.C.A. §§ 781–788.

■ Exclusive jurisdiction to consider petitions asserting the denial of rights or objecting to acts of forfeiture resulting from violations of the narcotics laws is vested in the Secretary of the Treasury. Title 19 U.S.C.A. § 1618, U. S. v. One Pontiac Coupe, 7 Cir., 298 F.2d 421. As already mentioned and set out in paragraph 6 above, the Secretary of the Treasury has in turn delegated to the Commissioner of Narcotics authority to exercise administrative discretion as to "Petitions for Remission or Mitigation of Forfeiture and/or Restoration of Proceeds of Value of Property" such as we have here.

§ 1009 of Title 5 U.S.C.A., upon which plaintiff predicates his complaint specifically excepts from its provisions and therefore from judicial review; "(2) agency action (which) is by law committed to agency discretion".

■ The Commissioner of Narcotics, commensurate with a legally cre-

ated discretionary power possessed by him, refused to remit or mitigate the forfeiture in the instant case. This is not a case where the Commissioner refused to even act *per se*; we do not have a situation where he refused to even exercise his discretionary power. He acted, and his actions were not to the best interest of the plaintiff. However, his actions were discretionary. The reason or reasons motivating his actions, by virtue of the exemption provision of § 1009, cannot be considered by the court. This court lacks the power to interfere with and in any way redress the grievances alleged in the instant complaint. U. S. v. One 1957 Buick Roadmaster, D.C., 167 F.Supp. 597. Accordingly, the defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, is granted, and the complaint is dismissed at plaintiff's costs.